UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KRISHNA REDDY                                                    Plaintiff

v.                                                    Civil Action No. 3:20-cv-128-RGJ

MEDISCRIBES, INC.; EZDI, INC.;                                   Defendants
VATSAL GHIYA; RAHUL MEHTA; JAN
MEANS; KRISSY SCOTT; MMODAL,
LLC; JENNY RILEY; LOIS MATVEY; and
DOES 1-100 INCLUSIVE, with the
individual defendants being sued in their
individual capacity as well as in their
official capacity as employees/agents of their
respective employers

* * * * *

## MEMORANDUM OPINION AND ORDER

Defendants Mediscribes, Inc. ("Mediscribes"), Ezdi, Inc. ("Ezdi"), and Vatsal Ghiya

("Ghiya") move to dismiss Plaintiff Krishna Reddy's ("Reddy") claims against them. [DE 19].

Reddy responded, [DE 58], and Defendants replied. [DE 64]. Defendants Rahul Mehta ("Mehta")

Jan Means ("Means") and Krissy Scott ("Scott") move to quash service of summons and

Complaint [DE 48] and Defendants Lois Matvey ("Matvey") and Jenny Riley ("Riley") move to

dismiss for improper service of process and/or to quash service. [DE 96]. Plaintiff has responded

and Defendants have replied. [DE 59, 66, 97, 99]. Finally, Reddy moves to strike Matvey and

Riley's Motion to Dismiss [DE 102] and for reconsideration of the Court's most recent Order.

[DE 108]. Further, pursuant to the Court's Order [DE 107] an initial review of Reddy's Complaint

under 28 U.S.C. § 1915(e)(2) is needed. These matters are ripe.

For the reasons below, Mediscribes, Ezdi, and Ghiya's Motion to Dismiss [DE 19] is

**GRANTED**, and pursuant to the Court's 28 U.S.C. § 1915(e)(2) review, Reddy's Complaint [DE

1] is **DISMISSED**. Mehta, Means, and Scott's Motion to Quash Service of Summons and Complaint [DE 48] is **DENIED as moot**. Matvey and Riley's Motion to Dismiss for Improper Service of Process and/or to Quash Service [DE 96] is **DENIED as moot**. Reddy's Motion to Strike [DE 102] and Motion for Reconsideration [DE 108] are **DENIED**.

## I.     BACKGROUND

Reddy brings this action *pro se* and *in forma pauperis* against several named and unnamed Defendants (collectively "Defendants"). [DE 6]. MModal is a "healthcare technology company" that subcontracts medical transcription work to Mediscribes. [DE 1 at 3, 4]. Mediscribes "is a medical transcription company," and its parent company is Ezdi,[1] a "technology company." [*Id.* at 2]. Ghiya[2] "was a co-founder and President of" Mediscribes. [*Id.*]. Mehta "was the Vice President of Global Operations at" Mediscribes. [*Id.*]. Defendant Jan Means ("Means") "was the Manager of Transcription Operations" and Defendant Krissy Scott ("Scott") "was Accounts Manager and Recruiter" at Mediscribes. [*Id.* at 3]. Defendant Lois Matvey ("Matvey") "was a manager at" MModal. [*Id.*]. Finally, "DOES 1 through 100 inclusive . . . probably are/were employees/agents of the remaining defendants[,]" and Reddy alleges that "each of the fictitiously named defendants is responsible in some manner for the occurrences . . . alleged [in her Complaint], and the damages [t]herein alleged were proximately caused by their conduct." [*Id.*]. This allegation is the *only* reference Reddy makes in her Complaint to the fictitiously named defendants. [*See* DE 1].

---

[1] While the Court questions whether Reddy has provided sufficient factual justification for Ezdi's inclusion in this suit, out of an abundance of caution, the Court will analyze each of Reddy's claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

[2] As with Ezdi, the Court questions whether Reddy has provided enough factual content concerning Ghiya to justify his inclusion in this suit. However, as with Ezdi, for the sake of completeness and out of an abundance of caution, the Court will analyze the substance of Reddy's claims as pleaded.

Reddy worked for Mediscribes and claims that Mediscribes mischaracterized her as an independent contractor. [*Id.* at 4]. Reddy brings seven claims against Defendants arising from her relationship with Mediscribes: (1) discriminatory employment practices, harassment, hostile work environment, and retaliation [*id.* at 11]; (2) tortious wrongful termination in violation of public policy [*id.* at 13]; (3) breach of contract and implied covenant of good faith and fair dealing [*id.* at 14]; (4) fraud, deceit, and civil conspiracy [*id.* at 15]; (5) defamation [*id.* at 16]; (6) intentional and negligent interference with contract and with prospective economic advantage [*id.* at 18]; and (7) intentional and negligent infliction of emotional distress. [*Id.* at 19].

Reddy is "a woman of East Indian origin." [*Id.* at 4]. After she graduated from medical school in India, she moved to the United States where she has since "been working in the medical transcription industry . . . in the capacity of a 'Medical Transcriptionist' as well as a 'Quality Assurance Editor.'" [*Id.*]. She first applied to Mediscribes in March 2013 for an "Escription Editor" position. [*Id.*]. Reddy claims that despite being qualified for the position, she "was discriminated [against] by defendant Krissy Scott and was not offered that position at the time." [*Id.* at 5].

In March 2017, after responding to another Mediscribes listing for a different position, Reddy "was hired initially as a 'Medical Transcriptionist[.]'" [*Id.*]. Reddy completed "MModal's transcription platform training, [then] was given access to both 'Fluency' . . . an internet-based transcription platform, and to 'Fluency Manager' . . . an MModal website where all the necessary documents such as detailed 'Client Profile' documents" and various MModal guidelines were available. [*Id.*]. Less than two weeks after Reddy started as a Medical Transcriptionist, she "was offered a 'Quality Assurance Editor' ["QA Editor"] position by Krissy Scott with" hourly wages and guaranteed pay "even if there was no work during [Reddy's] scheduled hours[.]" [*Id.*]. Reddy

asserts that her superiors, Scott and Means, "were inexperienced at their jobs[,]" because Means "did not show the necessary expertise in transcription," and Scott "seemed to be ignorant of the public policies with regard to employment as she overhired employees" and "did not pay them for 'waiting for work[.]'" [*Id.*]. Reddy also perceived her superiors as being inexperienced with both the Fluency and Fluency Manager platforms. [*Id.*].

Reddy represents that while other QA Editors had access to the full version of the Client Profile, a document that QA Editors have to cite to in the course of their duties, Reddy only had access to excerpts from the Client Profile document. [*Id.*]. According to Reddy, this was because the long form of the Client Profile document was only available through Fluency Manager, and her "ID was restrained from accessing those documents which were necessary for performance of [her] job as a QA Editor." [*Id.* at 6]. Scott, aware of this issue, shared her screen with Reddy to show Reddy where the necessary documents could be accessed; still, according to Reddy, her "ID did not have access to those documents, and [Scott] would not have MModal's IT Department provide [Reddy's] ID . . . access[.]" [*Id.*]. Reddy requested a physical copy of the Client Profile for offline use, as she represents was "the practice in the transcription industry[.]" [*Id.*]. Reddy claims that Means denied this request "as she felt [the long form document] was 'too long' and because she preferred the 'short form.'" [*Id.*].

Reddy argues that Means and Scott "were harassing [her] and blaming [her] for not complying with [the] Client Profile instructions that they did not provide [her] to begin with[.]" [*Id.* at 6-7]. In September 2017, Reddy was communicating with "a technician from MModal's IT Department" to reset her Fluency ID. [*Id.* at 7]. During these communications, Reddy notified the technician that her "ID was unable to retrieve the Client Profile instructions on Fluency Manager" and she also "showed him how [her] ID could not retrieve the 'WT (worktype) specific

instructions' or the Client Profile document[.]" [*Id.*]. In response, the technician gave her "ID limited QA privileges that were necessary to have access to those Client Profile instructions[.]" [*Id.*]. Reddy argues that she was never "given any 'managerial privileges' nor did [she] represent to anyone that [she] was a 'Manager' at Mediscribes." [*Id.*].

Reddy claims that she "was harassed by the management and discriminated against in work assignments with the managers and team leaders" because she was assigned to all of the most difficult jobs that had been looked over by other editors or assigned to managers for review. [*Id.*]. Reddy represents that her superior "threatened to fire [her] for doing [her] job correctly, and thus created a hostile environment for [Reddy] to work in." [*Id.*]. When Reddy pointed out errors in her superior's corrections to Reddy's work, Means "was very hostile and deleted [Reddy's] ID out of her Skype IM group." [*Id.* at 7-8]. Reddy's "email was also deleted from the group email list . . . and [her] email account stopped receiving any emails containing company communications." [*Id.* at 8]. She brought this to the attention of "Mediscribes' managers" twice in October 2017, but "did not receive any response[.]" [*Id.*]. Reddy recounts multiple dates in November 2017 where she did not have any available jobs in her "pool" while there were jobs available in the system for other QA Editors to work on. [*Id.*]. She notified Mediscribes' management of each of these instances. [*Id.*]. Reddy also informed a Mediscribes manager that she believed Scott had been overstaffing and that Mediscribes "could be liable to its employees for pay for 'waiting for work' which is a requirement under the Fair Labor Standards Act." [*Id.*]. Reddy alleges that "Scott started overhiring employees though there was not enough work to go around for the approximately 200 employees she had overhired[,]" which Reddy seems to connect to the lack of jobs in her own "pool." [*Id.*].

Mediscribes terminated its employment relationship with Reddy in November 2017. [*Id.* at 9]. Scott sent Reddy a "Termination Letter[,]" signed by Ghiya, "terminating [Reddy's] employment . . . immediately and '**for cause**.'" [*Id.*] (emphasis original). Reddy provided the following excerpt from her Termination Letter:

> We have discovered information which raises serious concerns about your behavior while working as an independent contractor with Mediscribes, Inc. . . . Specifically, we learned that while under contract with Mediscribes as an independent contractor, you contacted MModal and asked to be given managerial access to the entire Mediscribes account. You did not have permission from anyone at Mediscribes to do so, nor was there any reason you should have this access. The account contains highly confidential information pertaining to MModal and Mediscribes' business with MModal, which you are not authorized to access.

[*Id.*]. Reddy claims that Defendants "knew that the reason they gave for [her] termination was a pretext." [*Id.*]. She claims that her "ID profile at [the] Fluency Manager website clearly showed [her] as a 'QA' employee, but not as a 'Manager[,]'" and that "using common sense, if [she] had any 'managerial access' to the entire Mediscribes account[,]" she could have self-assigned the aforementioned jobs listed for other QA Editors. [*Id.*]. Reddy also represents that it was clear she never requested managerial access "as no such request . . . was documented on the IT ticket which MModal's IT had opened[.]" [*Id.*]. Reddy concluded that "the defendants manufactured that [story[3]] so that they could justify the termination of [her] employment 'for cause.'" [*Id.*].

After she was terminated, Reddy requested a grievance meeting and a copy of her employment file; she received neither. [*Id.* at 10]. Days later, she made another request for her employment file and "a copy of the audio recording of" her termination; in response, Scott informed Reddy that Reddy "was an 'independent contractor' and that [her superiors] w[ould] not respond to [her] requests." [*Id.*].

---

[3] Reddy uses the word "evidence," but does not suggest that there was any *evidence* that she asked for managerial access. Instead, Reddy appears to be discussing the *story*, as told by Defendants, that Reddy purportedly asked for managerial access.

Reddy initiated a discrimination proceeding with the Equal Employment Opportunity Commission ("EEOC"). [*Id.*]. During this proceeding, Reddy learned of "defamatory and derogatory communications about" her between Means, Matvey, and Riley. [*Id.*]. Reddy states that Riley and Matvey "alleged that [Reddy] had misrepresented [her]self to the IT Department at MModal as a 'Manager' and had obtained 'managerial privileges' for the 'Fluency Manager' website." [*Id.*]. Reddy also alleges that they "knew that their statements were not true[,]" but still "went on to say that [Reddy] 'attempted to access highly confidential information pertaining to MModal and Mediscribes' business with MModal, and that Mediscribes and MModal had worked to remove [Reddy's] log-in, with MModal even adding an additional level of security to ensure this could not happen again.'" [*Id.*]. Though the EEOC investigator "would not consider" Reddy's contention "that being paid hourly wages and working under supervision would make [her] status an 'employee' of Mediscribes," he nevertheless "issued a 'right-to-sue letter[.]'" [*Id.*].

## II. DISCUSSION

### 1. Pro Se *Pleading Standard*

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). For example, "the less stringent standard for *pro se* plaintiffs does not compel courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 Fed. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). A *pro se* complainant must still contain either direct or inferential allegations about all material elements to sustain a recovery under some viable legal theory. *See Leisure*, 21 Fed. App'x at 278.

Ultimately, "[t]he Court's duty to construe a *pro se* complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet for Families & Child.*, No. 3:07-cv-11-S, 2007 WL 2462184, at *4 (W.D. Ky, Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

2. *Initial Review Under 28 U.S.C. § 1915*

When a plaintiff proceeds in forma pauperis, a court must:

dismiss the case at any time if the court determines that –
  (A)  the allegation of poverty is untrue; or
  (B)  the action or appeal –
        (i)  is frivolous or malicious;
        (ii)  fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).  Thus, though only Mediscribes, Ezdi, and Ghiya move for dismissal under Fed. R. Civ. P. 12(b)(6),[4] [DE 19],[5] the Court will analyze Reddy's claims against all Defendants for failure to state a claim under 28 U.S.C. § 1915(e)(2).  Because it is the Sixth Circuit practice to screen a complaint filed in forma pauperis under 28 U.S.C. § 1915(e)(2) *before* issuing summons, *see McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)[6], the Court will complete the screening before considering the pending motions for deficient service of process.

---

[4] Other Defendants have moved to dismiss on alternative grounds for service of process.  [DE 96].  These motions are discussed later in this Opinion.  *See infra* Section II.3.

[5] Reddy asserts that because the Central District of California transferred "all claims against all Defendants[,]" and did not explicitly state that such transfer included Defendants' pending motions, it was, in effect, a denial of Defendants' pending motions.  [*See* DE 108 at 989-90].  Reddy provides no law to suggest that a venue transfer has this effect on pending motions in any scenario.  Indeed, Judge Bernal "transfer[red] this *matter*" to this Court.  [DE 67 at 511] (emphasis added).  This "matter" includes the entire record, and the claims, defenses, and requests therein. Thus, the motions are now properly pending before this Court.

[6] *Overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013).

The standard for dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) is nearly identical to the Fed. R. Civ. P. 12(b)(6) standard, in that "a court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Bell v. Kenney*, No. 20-5537, 2020 U.S. App. LEXIS 39898, at *2 (6th Cir. Dec. 18, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But under this standard, "the district court need not accept a bare assertion of legal conclusions." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

Reddy argues that the Central District of California already screened her Complaint "for (1) any inadequate showing of indigency; (2) Legally and/or factually patently frivolousness; [sic] (3) District Court lacking jurisdiction; and (4) Immunity of any of the defendants to this suit, among others[.]" [DE 108 at 990]. Yet the docket entry Reddy cites in support of this argument is a one-page form granting her request to proceed in forma pauperis, and it contains no discussion, analysis, or findings. [DE 6 at 34]. Instead, the form simply reflects the ultimate outcome of a request to proceed in forma pauperis (granting or denying), and if the request is denied, the judge filling it out may check one of five boxes specifying the grounds for the denial. [*Id.*]. Reddy's request was granted, so none of the grounds for denial were checked. [*Id.*]. Nothing on the form suggests that the Central District of California reviewed Reddy's Complaint for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2). [*Id.*].

i.      Count One

Reddy's first claim alleges "discriminatory employment practices, harassment, hostile work environment, and retaliation" against the "Mediscribes defendants[.]"[7] [DE 1 at 11]. She brings this claim under Title VII, 42 U.S.C. § 1981, and California's FEHA. [*Id.*]. Under Title VII, "the plaintiff bears the initial burden of submitting evidence to support a prima facie [c]ase of discrimination[,]" and therefore "must produce 'evidence sufficiently strong to raise an inference that the employer's conduct was racially motivated.'" *Jackson v. Richards Med. Co.*, 961 F.2d 575, 587 (6th Cir. 1992) (quoting *McKenzie v. Sawyer*, 684 F.2d 62, 71 *D.C. Cir. 1982). That said, "[t]he liberal pleading standard applicable to civil complaints" does not require a plaintiff to establish her prima facie case at this stage, "but [her complaint] must allege facts that establish a plausible claim to relief." *Carrethers v. Speer*, 6998 Fed. App'x 266, 270 (6th Cir. 2017).

A complaint "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,' that [the defendant] discriminated against [the plaintiff] with respect to her compensation, terms, conditions, or privileges of employment, *because of* her race, color, religion, sex, or national origin.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009); 42 U.S.C. § 2000e-2(a)(1)) (internal citations omitted) (edits omitted) (emphasis original). So, "[i]f a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id.* This standard of "'plausibility' occupies that wide space between 'possibility' and 'probability.'" *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678). The Supreme Court has cautioned that even when "it may

---

[7] Reddy does not identify the individuals or entities included in her definition of "Mediscribes defendants," [DE 1 at 11], however the Court reads this indication to include Mediscribes, Ghiya, Mehta, Means, and Scott, as those are the parties Reddy alleges are connected to Mediscribes. [*Id.* at 2-3].

appear on the face of the pleadings that a recovery is very remote and unlikely[,]" at this juncture, "an employment discrimination plaintiff need not plead a prima facie case of discrimination[.]" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). In *Swierkiewicz*, the Supreme Court held that the "petitioner's complaint easily satisfie[d] the requirements of Rule 8(a)" where the allegation of discrimination "detailed the events leading to [the petitioner's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." 534 U.S. at 514.

On the other hand, "[i]n order to establish a claim of hostile work environment, . . . a plaintiff must present evidence of harassment that 'unreasonably interfere[es] with [his] work performance and create[es] an objectively intimidating, hostile, or offensive work environment.'" *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)) (edits original). "Hostile work environment claims by their very nature require ongoing conduct[.]" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). Finally, "[i]n order to state a claim for retaliation under Title VII, a plaintiff must show: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Sharma v. Ohio State Univ.*, 25 Fed. App'x 243, 248 (6th Cir. 2001) (quoting *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)).

As a threshold matter, Reddy may not bring her first cause of action against those Defendants not named as respondents in her EEOC proceedings, and may only pursue this cause of action under Title VII. Prior to filing this suit, Reddy presented her charges of discrimination

to the Equal Employment Opportunity Commission ("EEOC"). [DE 1 at 10]. Though her EEOC proceedings were ultimately dismissed, she was issued a right to sue letter. [*Id.*]. Even though count one alternatively arises under California's FEHA, Reddy does not allege that she pursued her FEHA claims with the California Department of Fair Employment and Housing ("DFEH").

"An individual may not file suit under Title VII if she does not possess a 'right to sue' letter from the EEOC." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999). "Filing an EEOC charge against a party is a necessary prerequisite to suit." *Jones v. Truck Drivers Loc. Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984). "It is well settled that a party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and a party named in the EEOC charge or it has unfairly prevented the filing of an EEOC charge." *Id.* (collecting cases).

Reddy's EEOC proceedings named only Mediscribes, Ezdi, and MModal. [*See* DE 89-4 at 633].[8] Reddy has not alleged that the remaining Defendants have an identity of interest with Mediscribes, Ezdi, or MModal, nor that any remaining Defendants unfairly prevented the filing of her EEOC charges. As a result, Reddy may not pursue her Title VII claims against Ghiya, Mehta, Means, Scott, Riley, Matvey, or Does 1-100, as they were not named respondents in her EEOC proceeding. [*See* DE 89-4 at 633]. Reddy's Title VII claims against all Defendants other than MEdiscribes, Ezdi, and MModal fail for this reason and are thus **DISMISSED**.

Claims arising under California's FEHA are subject to similar requirements. An aggrieved party must first present FEHA claims to the DFEH before pursuing those claims in a civil lawsuit.

---

[8] Though DE 89-4 is not formally attached to Reddy's complaint, it may still be considered because it is "referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore et al., MOORE'S FED. PRAC. § 56.30[4] (3d ed. 1998) (quotations omitted). All the claims in Reddy's complaint "are based on the same nucleus of operative facts" as her EEOC claims, [DE 1 at 11], so documents from her EEOC proceedings are both referred to in her Complaint and central to her claims. *See Greenberg*, 177 F.3d at 514.

*Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1726 (1994). This requirement is not satisfied when a party only presents these claims to the EEOC, because "an EEOC right-to-sue notice satisfies the requirement of exhaustion of administrative remedies *only* for purposes of an action based on title VII." *Id.* (emphasis original). "Inasmuch as [a plaintiff] elect[s] to base her action not on title VII, but on the [FEHA], the EEOC right-to-sue notice technically [does] not satisfy the jurisdictional requirement that [the plaintiff] have exhausted her administrative remedies as to the asserted violations of the California statute." *Id.*

Reddy has provided no indication that she pursued her FEHA claims with California's DFEH before filing this suit. Reddy has thus failed to "specify the date on which she filed claims with the . . . DFEH, and the date of the right to sue notice from the DFEH, if any." *Earnest v. San Joaquin Gen. Hosp.*, 2017 U.S. Dist. LEXIS 48901, at *11 (E.D. Cal. Mar. 30, 2017). Absent such information, Reddy's FEHA claims within count one are **DISMISSED** because she "has not alleged she received any notice at all from the DFEH, only from the EEOC." *Id.* at *10-11; [*see* DE 1 at 10-11].

The gravamen of Reddy's remaining Title VII discrimination charge is twofold. First, Reddy alleges that Means and Scott often corrected Reddy's work and wrote her "memos after memos" suggesting Reddy's noncompliance with Mediscribes procedures; Reddy felt that this was harassment and that it created a hostile work environment. [DE 1 at 11]. Second, Reddy argues that Mehta and Ghiya terminated her employment in response to her Title VII and FLSA complaints, her whistleblower complaints against MModal, and their desire to impress nonminority executives at MModal. [*Id.* at 12]. Reddy has provided nothing to suggest that her termination from Mediscribes was known by, relevant to, or appreciated by anyone at MModal;

nor does she provide any basis to permit an inference that MModal executives would be "impressed" by her termination.

Reddy's purported "Title VII and FLSA complaints" were complaints included in an email to Mehta in which she raised concerns that she did not have incoming jobs assigned to her, and that she believed Mediscribes to be overstaffing employees. [*Id.* at 8]. Ultimately, Reddy argues that her termination "was based *apparently* on [her] race, National origin, ancestry, color, religion, age, among others." [*Id.* at 12] (emphasis added). But she does not put forth any information pertaining to her race, ancestry, color, religion, or age; she offers only that she is "a woman of East Indian origin[.]" [*Id.* at 11]. Further, Reddy's allegations give rise to an inference that she performed work for Mediscribes remotely, and she has not alleged which Defendants may have been aware of her East Indian origin. [*Id.*].

Like the plaintiff in *Swierkiewicz*, Reddy has detailed the events leading to her termination, including some relevant dates. [DE 1 at 7-8, 9]; 534 U.S. at 514. But she only provides the nationalities of two relevant persons, Mehta and Ghiya, who are also "East Indians[.]" [DE 1 at 12]. Further, even taking the allegations in her Complaint as true, the events that led to Reddy's termination do not support a "reasonable inference that[] [Mediscribes] discriminated against [Reddy] with respect to her compensation, terms conditions, or privileges of employment, *because of* her race, color, religion, sex, or national origin." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citations, quotations omitted). Reddy presents no facts suggesting that Mediscribes employees of different national origins were treated differently than her,[9] nor does she provide any argument permitting a reasonable inference that any of the individual defendants had

---

[9] Despite Reddy's single declaration, sans elaboration, that "other persons not of the same ethnic or National origin or age were not so treated," [DE 1 at 12], she does not indicate what "treatment" the other employees allegedly did not receive, nor does she provide the national origins of these employees.

discriminatory intentions toward her. As Defendants argue in their Motion to Dismiss, Reddy "makes no effort to tie her membership in protected classes to the alleged discriminatory/harassing actions. She baldly concludes that the former must have prompted the latter, offering no facts to support this assertion." [DE 19-1 at 108].

Reddy's hostile work environment and retaliation claims suffer from similar defects. First, as to her hostile work environment claim, Reddy merely alleges that Means harassed her by correcting her work, and that Means threatened to fire Reddy "for doing [her] job correctly." [DE 1 at 11]. At most, Reddy's allegations evidence a *disagreement about* duties and performance, not an *interference with* duties or performance. *See Younis*, 610 F.3d at 362. Even accepting them as true, these allegations fail to plausibly allege ongoing conduct resulting in an objectively intimidating, hostile, or offensive work environment. *See Randolph*, 453 F.3d at 732. As for her retaliation claim, it is questionable whether Reddy's allegations establish protected activity. Reddy offers only a conclusory statement that she "gave a complaint of discrimination against [her] at Mediscribes to" Mehta. [DE 1 at 8]. She does not indicate how she conveyed this complaint to Mehta or the substance of the complaint. [*Id.*]. Even if Reddy engaged in a protected activity, however, her allegations are still insufficient to state a retaliation claim. Reddy does not provide any factual allegations that implicate Mehta in the decision to terminate Reddy. [*Id.* at 12]. Reddy offers multiple conclusions, with no elaboration, that Mehta and Ghiya intended to retaliate against Reddy for "whistleblower complaints against" MModal. [*Id.*]. Reddy has simply failed to allege any facts suggesting that the alleged retaliation was based on some prior relationship she purportedly had with MModal. So, even if Reddy put forth sufficient allegations that she engaged in a protected activity, she has not provided factual allegations supporting causation or any relationship between that activity and her termination.

Even under the modest standard of plausibility, Reddy's conclusory allegations do not permit a reasonable inference that Mediscribes discriminated against her, harassed her, or caused her work environment to be hostile because of her East Indian origin. Nor do her allegations permit an inference that Defendants retaliated against her for engaging in a protected activity. As a result, under 28 U.S.C. § 1915(e)(2), Reddy's first cause of action is **DISMISSED** for failure to state a claim.

ii.   Count Two

Reddy's second cause of action is for "tortious wrongful termination in violation of public policy." [DE 1 at 13]. Reddy cites California[10] public policies, namely the FEHA, as grounds for this claim. [*Id.*]. To state a claim for wrongful termination in violation of public policy in California, Reddy must establish "(1) the existence of a public policy and (2) a nexus between the public policy and employee's termination." *Dep't of Fair Empl. & Hous. V. Lucent Techs., Inc.*, 642 F.3d 728 (9th Cir. 2011) (citing *Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1034 (Cal. 1994)). So, under California law, "an employee must prove causation." *Ferrick v. Santa Clara Univ.*, 231 Cal. App. 4th 1337, 1357 (2014). "Claims of whistleblower harassment and retaliatory termination may not succeed where a plaintiff 'cannot demonstrate the required nexus between his reporting of alleged statutory violations and his allegedly adverse treatment by [the employer].'" *Id.* (quoting *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1258 (Cal. 1994)) (edits in original).

---

[10] The Governing Law provision of the parties' Agreement does not apply to this claim because this is not a contract construction or interpretation claim. [*See* DE 20 at 126]. This claim is based in tort and depends on an alleged injury in California, where Reddy was located. Reddy uses California public policy to establish this claim, [DE 1 at 13], and Defendants' arguments to dismiss this claim are similarly premised on California law. [DE 19 at 109]. Further, "[c]hoice-of-law arguments are subject to waiver[,]" *Black v. Dixie Consumer Prods. LLC*, 2018 U.S. Dist. LEXIS 34440 at *9 (W.D. Ky. Mar. 2, 2018), and none of the parties have advanced an argument that a different state's law applies to this claim. Thus, the Court analyzes this claim under California law.

Reddy alleges that her "termination was in retaliation for complaining about Title VII issues and requesting employer's compliance with the State and Federal laws." [*Id.*]. She also alleges that her termination violated "California's Government Code Section 12940(a) that specifically prohibits any discrimination in compensation or in terms, conditions, or privileges of employment[.]" [*Id.*]. As explained above,[11] Reddy has failed to show how her termination violated Title VII and has demonstrated no causal nexus between her charges of discrimination and her termination. As Defendants argue, Reddy's "allegations [are] insufficient to state claims under Title VII and FEHA, [so] they cannot establish a violation of the public policies embodied in those statutes." [DE 19-1 at 109-10]. Thus, Reddy's second cause of action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2).

    iii.    Count Three

Reddy's third cause of action is for "breach of contract and implied covenant of good faith and fair dealing." [DE 1 at 14]. "Under Kentucky law, in order to recover in any action based on breach of a contract, a plaintiff must show the existence and the breach of a contractually imposed duty." *Ky. Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 374 (Ky. Ct. App. 2008) (quoting *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)). "Kentucky has only ever recognized a breach of the implied covenant of good faith and fair dealing as tortious (*e.g.*, as a violation of a general duty owed independently of a contract) where the situation has involved parties in a special relationship not found in ordinary commercial settings, such as between an insurer and insured, where distinct elements are present such as unequal bargaining power, vulnerability and trust among the parties." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785

---

[11] *Supra* Section II.2.i.

F.3d 189, 196-97 (6th Cir. 2015) (quoting *Atmos Energy Corp. v. Honeycutt*, Nos. 2011-CA-601/783, 2013 WL 285397 *10 (Ky. Ct. App. Jan. 25, 2013)).

Reddy alleges that she was "under a contract" with Mediscribes "that was partly written, partly oral and partly implied, which provided that employees would be treated fairly and in accordance with the relevant laws of the State of California and the relevant federal laws." [*Id.*]. Though Reddy did not attach this contract with Mediscribes to her Complaint, the contract is both "referred to in the complaint and . . . central to [Reddy's] claim." *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999). So, for purposes of this analysis, the Court may consider the employment contract, which Defendants entered as an exhibit. [*See* DE 20 at 123-28]. Relevant to this claim and the law of the case, while granting Defendants' motion for a venue transfer, Judge Bernal found that "[t]he Employment Agreement is . . . a valid contract under Kentucky law." [DE 67 at 506]. Further, Judge Bernal held that there was no novation of the Employment Agreement, and that it remains "the operative contract between [Reddy] and [the] Mediscribes Defendants." [*Id.* at 508].

Though Reddy frames this claim as one for both breach of contract and *implied* covenant of good faith and fair dealing, her contract with Mediscribes contained an *express* obligation of good faith and fair dealing. [*See* DE 20 at 127, ¶ 11]. Reddy's claim of breach of *implied* covenant of good faith and fair dealing is **DISMISSED**, because the claim is subsumed within her breach of contract claim based on the express good faith and fair dealing provision in her contract. *See Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529, 543 (6th Cir. 2017) ("Because the issue is controlled by express terms that leave no ambiguity or openness to interpretation, we need not consider implied terms"); *see also Big Yank Corp v. Liberty Mut. Fire*

*Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) ("a party's acting according to the express terms of a contract cannot be considered a breach of the duties of good faith and fair dealing").

As grounds for her breach of contract claim, Reddy alleges that Mediscribes "did not abide by their own policies when dealing with" Reddy, because she was "not provided access to the complete Client Profile of accounts . . . which was necessary for [her] to perform [her] job as QA Editor[.]" [DE 1 at 14]. She alleges that some QA Editors were given full access to the Client Profile account, and "some other QA Editors were given managerial privileges[.]" [*Id.* at 14]. Finally, Reddy argues that though she was terminated, the offered reason for her termination was pretextual, that Mediscribes "could have granted [Reddy] a grievance hearing" but did not, and that their denial of a grievance meeting was "in bad faith." [*Id.* at 14-15].

Reddy identifies no contractual obligations that the above-stated facts might have breached. Further, as to her termination, Reddy's employment contract provided that "Mediscribes may terminate the Agreement at anytime *with or without cause*." [DE 20 at 124] (emphasis added). As a matter of law, Reddy's termination was not a breach of her agreement with Mediscribes; it was an action that her agreement expressly permitted Mediscribes to take. [*Id.*]. In sum, Reddy has failed to identify what actions Mediscribes took that were allegedly in breach of their agreement, and similarly, she has failed to identify the contractual provisions or obligations that Mediscribes allegedly breached. For these reasons, Reddy has failed to state a claim for breach of her employment contract with Mediscribes and count three is thus **DISMISSED** under 28 U.S.C. § 1915(e)(2).

 iv. Count Four

Reddy's fourth cause of action is for "fraud, deceit, and civil conspiracy" against all Defendants. [DE 1 at 15]. In Kentucky, "[f]raud through misrepresentation requires proof that:

(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff."[12] *Helm v. Ratterman*, 778 Fed. App'x 359, 371 (6th Cir. 2019) (quoting *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747-48 (Ky. 2011)). On the other hand, "[t]o prevail on a civil conspiracy claim, a plaintiff must show that (1) a 'single plan existed,' (2) the defendants 'shared in the general conspiratorial objective' to deprive plaintiff of his constitutional or federal statutory rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury' to the plaintiff." *Trans Rail Am. V. Hubbard Twp.*, 478 Fed. App'x 986, 988 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

Claims of fraud are subject to a heightened pleading standard where the plaintiff must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Sixth Circuit has interpreted Fed. R. Civ. P. 9(b) "to mean a plaintiff must '(1) specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 Fed. App'x 979, 982 (6th Cir. 2017). Additionally, "[a]lthough 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as

---

[12] Though a claim of fraud *by omission* "has substantially different elements[,] . . . . a fraud by omission claim is grounded in a duty to disclose." *Helm*, 778 Fed. App'x at 371 (quoting *Giddings & Lewis*, 348 S.W.3d at 747-48). Reddy has not alleged that the Defendants owed her any duty to disclose, nor has she alleged facts that would permit a reasonable inference that Defendants were under such a duty. Thus, the Court only analyzes this claim under the elements of fraud by misrepresentation.

true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

Reddy alleges that "[e]ach of the defendants" committed fraud, deceit, and civil conspiracy, but does not provide sufficient detail about the allegedly fraudulent statements at issue, nor about the alleged conspiracy. [DE 1 at 15]. Reddy uses the words "they" and "defendants" throughout this claim but does not specifically indicate which Defendants she is alleging to have made fraudulent statements. As to the allegedly fraudulent statements, Reddy argues that "they" (unnamed Defendants) falsely said that Reddy "misrepresented to MModal's IT that [she] was a 'Manager' and that [she] had sought 'managerial privileges[,]'" while "[t]he evidence that they had in their possession at the time clearly show[ed] that [Reddy] had never misrepresented to anyone in MModal's IT that [she] was a 'Manager.'" [*Id.* at 15]. It is not clear whether Reddy's claim stems from statements made *to her* or made to others *about* her. Reddy does not identify the speaker(s) of these allegedly false statements, nor does she identify when or where these statements were made. [*Id.* at 14-16]. Reddy also does not identify the medium of the statements or how they were communicated. Reddy's allegations are thus insufficient to meet at least two of the Sixth Circuit's four requirements for pleadings alleging fraud under Fed. R. Civ. P. 9(b) because she has not identified the speaker of the allegedly fraudulent statements, nor where and when the statements were made. *See William Beaumont Hosp. Sys.*, 677 Fed. App'x at 982.

Reddy similarly fails to assert civil conspiracy because she has not alleged that the Defendants made an agreement to engage in behavior together, nor does she identify the purported object of their conspiracy. [*See* DE 1 at 16]. Given that she has failed to identify a conspiratorial objective, she has not provided an example of any overt acts taken to advance the purported

conspiratorial objective. [*Id.*]. Thus, pursuant to 28 U.S.C. § 1915(e)(2), Reddy's fourth cause of action is **DISMISSED** for failure to state a claim.

v.      Count Five

Reddy's fifth cause of action is for defamation, against all Defendants. [DE 1 at 16]. In Kentucky, a defamation claim has four necessary elements: "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation." *Hays v. Clear Channel Communs., Inc.*, 2006 Ky. App. Unpub. LEXIS 378, at *5 (Ct. App. Nov. 3, 2006) (citing *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981)). "Publication requires that the words were intentionally or negligently communicated as to be heard by an understanding third party." *Smith v. Westlake PVC Corp.*, 1997 U.S. App. LEXIS 34536, at *8 (6th Cir. Dec. 3, 1997) (citing *Columbia Sussex Corp.*, 627 S.W.2d at 272).

Reddy fails to identify the specific allegedly defamatory statements. Like Reddy's fraud claim, she also does not specify the individuals that purportedly made defamatory statements, alleging broadly that the Defendants made up the proffered reason for Reddy's termination from Mediscribes. [DE 1 at 16-17]. Reddy also does not specify whether her defamation claim stems from statements made *to* her, or to others about her. [*Id.*]. She alleges that the Defendants manufactured evidence against her to justify her termination, but does not allege that Defendants published said manufactured evidence to a third party. [*Id.* at 17]. Nor does she include further detail about the purportedly manufactured evidence, how it was used, what it was, or to whom it was given. [*Id.*]. Reddy's conclusory allegations do not set forth facts that give rise to a colorable claim of defamation. Thus, under 28 U.S.C. § 1915(e)(2), Reddy's fifth cause of action is **DISMISSED** for failure to state a claim.

vi.     Count Six

Reddy's sixth cause of action is for "intentional and negligent interference with contract and with prospective economic advantage" against "all Defendants except Mediscribes." [DE 1 at 18]. Her factual claims for this count are as follows:

> Each of the individual defendants fraudulently interfered with the contract that I had with Mediscribes for their own ulterior motives. Jan Means and Krissy Scott obviously wanted to secure their own employment as managers at my cost. Rahul Mehta and Vatsal [Ghiya] apparently wanted to impress MModal executives by firing me. The individual MModal defendants obviously wanted to secure their own managerial jobs, while MModal apparently wanted to achieve its own 3:1 profit ratio and felt me as an obstacle to that goal as I was questioning the questionable line counts on Fluency transcription platform. To achieve their goals, each of the defendants interfered with the contract I have had with Mediscribes.

[*Id.*].

According to the Supreme Court of Kentucky, "[f]or a party to be liable for tortiously interfering with a contractual relationship, said party must intentionally and improperly interfere with another's existing or prospective contractual relation." *Sparkman v. Consol Energy, Inc.*, 571 S.W.3d 569, 570 (Ky. 2019). "[A] parent company has a qualified privilege to interfere with the contractual relations of its wholly-owned subsidiary unless it employs wrongful means, or its interference is not in the economic interest of the subsidiary." *Id.*

This claim cannot be pursued against Ezdi, as it is "the parent company" of Mediscribes, and Reddy has not alleged wrongful means nor a differing economic interest among Ezdi and Mediscribes. [DE 1 at 2, 18]; *Sparkman*, 571 S.W.3d at 570. Reddy does not provide factual allegations against MModal or any of the individual Defendants that permit an inference that they interfered with her contract. Ultimately, Reddy did not identify what actions Defendants took that purportedly interfered with her contract, nor did she identify any actual interference with the performance of her contract. Without such critical information to put forth any plausible basis for

her claim, Reddy has not stated a claim for intentional and negligent interference with contract or with prospective economic advantage. Thus, pursuant to 28 U.S.C. § 1915(e)(2), Reddy's sixth cause of action is **DISMISSED** for failure to state a claim.

 vii. Count Seven

 Reddy's final cause of action is for "intentional and negligent infliction of emotional distress" against all Defendants. [DE 1 at 19]. The Kentucky Supreme Court has adopted the Restatement (Second) of Torts definition of intentional infliction of emotional distress ("IIED"):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to others results from it, for such bodily harm.

*Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (quoting Restatement (Second) of Torts § 46). To recover for IIED, a plaintiff must establish:

> (1) the wrongdoer's conduct was intentional or reckless;
> (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> (4) the distress suffered must be severe.

*Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000). Conduct is only actionable under the tort of IIED if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 275 (Ky. 2014). It is the type of conduct that would lead "an average member of the community" to exclaim, "Outrageous!" when he hears the facts of the case. *Id.* "Mere insults, indignities, threats, annoyances, petty oppressions, [and] other trivialities" do not meet this standard. *Id.*

 As grounds for this claim, Reddy repeats several conclusory allegations; she argues:

during my employment at Mediscribes, the defendants discriminated me [sic] in job assignments, harassed me, and created a hostile environment for me to work in. For raising Title VII issues and Fair Labor Standards Act issues at Mediscribes, in retaliation, the defendants terminated my employment at Mediscribes. They indulged in a conspiracy to justify the wrongful termination of my employment by manufacturing derogatory statements about me which they published, which were defamatory. The remaining defendants intentionally and negligently interfered with the contract I have had with Mediscribes and with my prospective economic advantage, which resulted in loss of my employment and the source of my income.

[*Id.*]. Reddy does not provide any factual basis to support these conclusions. Reddy has not factually alleged that any of the Defendants engaged in conduct that is patently outrageous. Her bare conclusions, without further elaboration, that Defendants harassed her, retaliated against her, conspired against her, defamed her, and interfered with her contract, are simply not supported by the factual allegations presented in Reddy's Complaint. Reading the facts in Reddy's Complaint as true and in the light most favorable to her, she has failed to allege any actions, by *any* Defendants, that go beyond all bounds of decency or are intolerable in a civilized society. Thus, under 28 U.S.C. § 1915(e)(2), Reddy's seventh cause of action is **DISMISSED**.

*3. Motions Regarding Service of Process and Summons*

The 28 U.S.C. § 1915 "screening must occur even before process is served or the individual has had an opportunity to amend the complaint." *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997) *overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013). Because the Court has found that Reddy's Complaint fails to state a claim pursuant to its screening under 28 U.S.C. § 1915(e)(2), *supra* Section II.2, the remaining issues concerning service of process are moot. Thus, Defendants Matvey and Riley's Motion to Dismiss for Improper Service of Process and/or to Quash Service, [DE 96], is **DENIED as moot**, and Reddy's Motion to Strike DE 96 [DE 102] is also therefore **DENIED as moot**. Additionally, Mehta,

Means, and Scott's Motion to Quash Service of Summons and Complaint [DE 48] is **DENIED as moot**.

### 4. *Motion for Reconsideration*

Reddy moves this Court to reconsider its most recent Order. [DE 108]. "District courts possess the authority and discretion to reconsider and modify interlocutory judgments at any time before final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 952 (6th Cir. 2004) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

The Court's Order denied Reddy's previous Motion for Entry of Default and Motion to Strike two of Defendants' pleadings. [DE 107]. The Order also administratively re-docketed certain entries that were previously erroneously docketed. [*Id.*]. The crux of Reddy's Motion for Reconsideration is her belief that "the defendants' attorneys' [made] misrepresentations [that] resulted in error of fact resulting in manifest injustice towards [Reddy.]" [DE 108 at 988]. Reddy believes that when the Central District of California transferred this matter to this Court, all pending motions were dismissed. [*Id.* at 990]. Reddy's belief appear to stem from the operative language used by the Central District of California to "terminate" this matter from its docket upon transfer. [*Id.* at 989]. As Defendants note in their response, and "[a]s this Court is well aware, 'terminated' is simply a clerical notation, used to indicate that the California Court is no longer handling the case. There has been no misrepresentation." [DE 109 at 1009]. The venue transfer did not substantively dispose of any of the ripe pending motions. *See supra* Section II.2 at n.5.

26

The Court finds no intervening change of controlling law, nor new evidence available. Reddy argues that reconsideration is needed because of clear error or manifest injustice for her erroneous categorization of the Central District of California's denoted "termination" of this matter. [DE 108 at 993]. As discussed above, there is no manifest injustice in considering fully briefed and ripe motions properly before this Court. Thus, Reddy's Motion for Reconsideration [DE 108] is **DENIED**.

## CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Pursuant to the Court's 28 U.S.C. § 1915(e)(2) review, Reddy's Complaint [DE 1] is **DISMISSED**;

(2) Mehta, Means, and Scott's Motion to Quash Service of Summons and Complaint [DE 48] is **DENIED as moot**;

(3) Matvey and Riley's Motion to Dismiss for Improper Service of Process and/or to Quash Service [DE 96] is **DENIED as moot**;

(4) Reddy's Motion to Strike [DE 102] and Motion for Reconsideration [DE 108] are **DENIED**.